UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES MORRISON,

    Plaintiff,

v.                                                                         Case No. 8:20-cv-1827-CPT

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

    Defendant.
_____/

**O R D E R**

The Plaintiff seeks judicial review of the Commissioner's denial of his claim for Disability Insurance Benefits (DIB). For the reasons discussed below, the Commissioner's decision is affirmed.

I.

The Plaintiff was born in 1957, has a college degree, and has past relevant work experience as a teacher and director of athletics. (R. 26, 39, 66, 202). In August 2016, the Plaintiff applied for DIB, alleging disability as of May 2016 due to gout, multiple sclerosis (MS), hip bursitis, chronic kidney disease, deteriorating motor skills, a history

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Kijakazi is substituted for Commissioner Andrew M. Saul as the Defendant in this suit.

of quadruple heart bypass, stress due to physical illness, and degenerative joint disease of the hip.[2] (R. 39, 72, 176, 201). The Social Security Administration (SSA) denied the Plaintiff's application both initially and on reconsideration. (R. 84, 99).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter in November 2018. (R. 34–71, 115–16). The Plaintiff was represented by counsel at that proceeding and testified on his own behalf. (R. 34, 39–64). A vocational expert (VE) also testified. (R. 64–71).

In a decision issued in April 2019, the ALJ found that the Plaintiff: (1) had not engaged in any substantial gainful activity since his alleged onset date in May 2016; (2) had the severe impairments of MS, obesity, leukocytosis, hypertension, trochanteric bursitis, coronary artery disease, and chronic kidney disease; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listings;[3] (4) had the residual functional capacity (RFC) to perform a restricted range of sedentary work with some exertional limitations; and (5) based on the VE's testimony, was able to perform his past relevant work as a director of athletics. (R. 17–27). In light of these findings, the ALJ concluded the Plaintiff was not disabled. (R. 26).

---

[2] The Plaintiff added chronic kidney disease and degenerative joint disease of the hip later in the administrative process. *Compare* (R. 201) *with* (R. 39).

[3] The listings are found at 20 C.F.R. Pt. 404, Subpt. P, App'x 1 and catalog those impairments that the SSA considers significant enough to prevent a person from performing any gainful activity. 20 C.F.R. § 404.1520(a)(4). When a claimant's affliction(s) match an impairment on the list, the claimant is automatically entitled to disability benefits. *Id.*; *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

The Appeals Council granted the Plaintiff's request for review and affirmed the ALJ's determination of no disability. (R. 1–8).

II.

The Social Security Act (SSA) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).[4]  A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)).[5] Under this process, an ALJ must assess whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals any of the listings; (4) has the RFC to engage in his past relevant work; and (5) can perform other jobs in the national economy given his RFC, age, education, and work experience. *Id.* (citing 20 C.F.R. § 404.1520(a)(4);

---

[4] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.
[5] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

3

*Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)). Although the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278-79 (11th Cir. 2020) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove he cannot engage in the work identified by the Commissioner. *Goode*, 966 F.3d at 1279. In the end, "the overall burden of demonstrating the existence of a disability . . . rests with the claimant." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the matter after a hearing. 42 U.S.C. § 405(g). Judicial review is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence. *Id.*; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019) (citations and quotations omitted). In evaluating whether substantial evidence supports the Commissioner's decision, a court "may not decide the facts anew, make credibility determinations, or re-weigh the evidence."

4

*Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)). While a court will defer to the Commissioner's factual findings, it will extend no such deference to her legal conclusions. *Keel-Desensi v. Berryhill*, 2019 WL 1417326, at *2 (M.D. Fla. Mar. 29, 2019) (citing *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)).

III.

The Plaintiff raises two challenges on appeal: (1) the ALJ's evaluation of two opinions rendered by the Plaintiff's treating neurologist, Dr. T. Richard Hostler, is not adequately buttressed by the record; and (2) the ALJ improperly discounted the Plaintiff's subjective complaints of pain and other symptoms. (Doc. 19 at 8–10, 13–20). Upon careful review of the parties' submissions and the pertinent portions of the record, the Court finds the Plaintiff's challenges to be without merit.

A.

As noted above, at step four of the sequential evaluation process, the ALJ must determine the claimant's RFC and his ability to perform his past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545. To do so, an ALJ "must consider all medical opinions in a claimant's case record, together with other relevant evidence." *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (per curiam) (citing 20 C.F.R. § 404.1527(b)). Medical opinions are statements from physicians or other acceptable medical sources "'that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite his impairment(s), and [the

5

claimant's] physical or mental restrictions.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178–79 (11th Cir. 2011) (quoting 20 C.F.R. § 404.1527(a)(2)).

An ALJ must state with particularity the weight given to a medical opinion and the reasons therefor. *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 834 (11th Cir. 2011) (per curiam) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam)). In rendering this assessment, an ALJ must take into account: (1) whether the healthcare provider at issue has examined the claimant; (2) the length, nature, and extent of the provider's relationship with the claimant; (3) the medical evidence and explanation supporting the provider's opinion; (4) the degree to which the provider's opinion is consistent with the record as a whole; and (5) the provider's area of specialization. 20 C.F.R. § 404.1527(c).[6] While an ALJ is required to consider each of these factors, he is not obligated to address them explicitly in his decision. *Lawton*, 431 F. App'x at 833.

The Regulations set forth three tiers of medical opinions: (1) treating physicians; (2) non-treating, examining physicians; and (3) non-treating, non-examining physicians. *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (per curiam) (citing 20 C.F.R. §§ 404.1527(a)(2), (c)(1)–(2)). A treating physician's opinion is accorded the most deference because there is a greater likelihood that such a provider

---

[6] Although the regulations governing an ALJ's assessment of opinion evidence were amended effective March 27, 2017, the new regulations only apply to applications filed on or after that date. *See* 20 C.F.R. § 404.1520c. Because the Plaintiff submitted his DIB application in August 2016, the old regulations are controlling here.

will "be able to give a more complete picture of the [claimant's] health history." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1259 (11th Cir. 2019) (per curiam) (citing 20 C.F.R. § 404.1527(c)(2)). As a result, the ALJ must give the opinion of a treating physician significant or considerable weight unless the ALJ clearly articulates reasons—buttressed by substantial evidence—that establish "good cause" for discounting that opinion. *Hargress*, 883 F.3d at 1305–06; *Phillips*, 357 F.3d at 1241. "Good cause exists when (1) the treating physician's opinion was not bolstered by the evidence, (2) the evidence supported a contrary finding, or (3) the treating physician's opinion was conclusory or inconsistent with his or her own medical records." *Schink*, 935 F.3d at 1259 (citations omitted).

Unlike a treating physician, the opinion of a non-treating, examining physician "[i]s not entitled to great weight." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (per curiam) (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam)). And the opinion of a non-treating, non-examining physician is generally afforded the least deference. *Huntley v. Soc. Sec. Admin., Comm'r*, 683 F. App'x 830, 832 (11th Cir. 2017) (per curiam). In the end, an ALJ "is free to reject the opinion of *any* physician when the evidence supports a contrary conclusion." *Id.* (citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam)); *accord Sharfarz*, 825 F.2d at 280 ("Of course, the ALJ may reject any medical opinion if the evidence supports a contrary finding.") (citation omitted).

The crux of the Plaintiff's first challenge centers around two questionnaires completed by Dr. Hostler, one in October 2016 and the other in January 2018. (R.

7

544–45, 581). In the first questionnaire, Dr. Hostler found that the Plaintiff suffered from "severe fatigue" and a "decreased ability to perform fine manipulation," both of which Dr. Hostler deemed to be "related to [a] working diagnosis of multiple sclerosis." (R. 544–45). Dr. Hostler also observed, however, that the Plaintiff's grip strength and lower extremity strength were four out of five, and that the Plaintiff did not need a hand-held assistive device to ambulate on his own. (R. 545).

In the second questionnaire, Dr. Hostler noted that the Plaintiff had a number of afflictions, including double vision, speech difficulties, challenges with his bladder control, the manifestations of MS (at least on an imaging study), and a sustained disturbance of his gait and station. (R. 581). Dr. Hostler additionally determined, *inter alia*, that the Plaintiff could neither stand nor walk at all during a work day but could lift ten pounds on both an occasional and frequent basis and could also occasionally use his left arm and frequently use his right arm to work. *Id.*

In her decision, the ALJ reviewed the information supplied by Dr. Hostler in both questionnaires. (R. 23–24). The ALJ "accorded significant weight" to the opinion expressed by Dr. Hostler in the first questionnaire and thus included exertional and nonexertional limitations in the Plaintiff's RFC to accommodate the Plaintiff's "diminished grip strength and lower extremity strength." (R. 23). The ALJ, however, found the restrictions imposed by Dr. Hostler in the second questionnaire to be inconsistent with Dr. Hostler's own treatment documentation, the Plaintiff's self-reports, and other record evidence. (R. 24–25). To buttress this finding, the ALJ cited the opinions of other providers, as well as progress notes that revealed the Plaintiff's

8

physical examinations were "unremarkable," his medication had been successful in treating his MS, his condition had been stable over the years, and he had not experienced exacerbations of his MS. (R. 24) (citations omitted).

The Plaintiff now argues broadly that the ALJ's evaluation of Dr. Hostler's opinions set forth in the two questionnaires is not supported by substantial evidence. (Doc. 19 at 8–10). With respect to Dr. Hostler's responses in the second questionnaire in particular, the Plaintiff asserts that the ALJ should have placed greater emphasis on those responses given Dr. Hostler's findings in the first questionnaire and the other evidence of record. (Doc. 19 at 9–10). This contention fails.

To begin, as noted above, the ALJ assigned "significant weight" to the information Dr. Hostler supplied in the first questionnaire and imposed limitations in the Plaintiff's RFC that comported with those responses. (R. 23). Accordingly, the Plaintiff's quarrel with the ALJ's assessment of Dr. Hostler's opinion expressed in the first questionnaire cannot stand.

As for Dr. Hostler's responses in the second questionnaire, the problem with the Plaintiff's criticism of the ALJ's evaluation of those responses is that it misapprehends the Court's limited role on appeal. The question before the Court is not whether there is evidence in the record that bolsters a claimant's position but whether there is an "absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam) (citing *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam)).

9

Here, while the portions of the record identified by the Plaintiff may suggest he is entitled to more restrictions than those designated by the ALJ, that evidence does not negate the medical documentation and other information which buttress the ALJ's decision to discount Dr. Hostler's second opinion. Nor is it the function of the Court at this juncture to re-weigh the evidence or to decide the facts anew. *Lawton*, 431 F. App'x at 833; *Carter*, 726 F. App'x at 739. This, of course, is essentially what the Court would be doing if it were to accept the Plaintiff's invitation to engage in a *de novo* assessment of the import of Dr. Hostler's responses to the second questionnaire.

Finally, irrespective of the deficiencies in the Plaintiff's argument, the ALJ's determination to assign little weight to Dr. Hostler's second opinion is sufficiently bolstered by the medical records, the Plaintiff's self-reports, and the inconsistencies between Dr. Hostler's own notes and his second opinion, all of which constitute more than a "mere scintilla." *Biestek*, 139 S. Ct. at 1154. As a result, the Plaintiff's first challenge is without merit.

B.

The Plaintiff second challenge—that the ALJ improperly discounted the Plaintiff's subjective complaints of pain and other symptoms (Doc. 19 at 13–20)—is governed by the "pain standard." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam). Under this standard, a claimant must show "'(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from the condition or (3) that the objectively determined medical condition is of such severity that it can be reasonably expected to

10

give rise to the alleged pain.'" *Id.* (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam)).

If a claimant meets the pain standard, the ALJ must then assess the intensity and persistence of the claimant's symptoms to determine how they restrict his capacity to work.  20 C.F.R. § 404.1529.  The considerations relevant to this analysis include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his pain or other symptoms; (5) treatment (other than medication) the claimant receives or has received for relief of her pain or other symptoms; (6) any measures the claimant uses or has used to relieve her pain or other symptoms; and (7) other factors concerning the claimant's functional limitations due to pain or other symptoms.  *Id.*

After evaluating "a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed [on appeal] for substantial evidence."[7] *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (per curiam) (citing *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984)).  The ALJ, however, "need not

---

[7] On March 16, 2016, Social Security Ruling (SSR) 16-3p superseded SSR 96-7p.  *See* SSR 16-3p, 2016 WL 1119029, at *1 (S.S.A. Mar. 16, 2016).  SSR 16-3p eliminates the use of the term "credibility" and clarifies that "subjective symptom evaluation is not an examination of an individual's character." *Id.* The change in terminology, however, does not change the substance of the Court's analysis.  *See Yangle v. Comm'r of Soc. Sec.*, 2020 WL 1329989, at *4 n.2 (M.D. Fla. Mar. 23, 2020); *Waters v. Berryhill*, 2017 WL 694243, at *6 n.4 (S.D. Ga. Jan. 30, 2017), *report and recommendation adopted*, 2017 WL 693275 (S.D. Ga. Feb. 21, 2017).

11

cite particular phrases or formulations" in making this assessment, so long as the reviewing court can be satisfied that the ALJ "considered [the claimant's] medical condition as a whole." *Chatham v. Comm'r of Soc. Sec.*, 764 F. App'x 864, 868 (11th Cir. 2019) (per curiam) (internal quotation marks and citation omitted); *see also Stowe*, 2021 WL 2912477, at *4 (explaining that if an ALJ does not identify specific and adequate reasons for rejecting a claimant's pain testimony, "the record must be obvious as to the [ALJ's] credibility finding") (citing *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995) (per curiam)). A reviewing court will not disturb a clearly articulated credibility finding made by an ALJ that is buttressed by substantial evidence. *Foote*, 67 F.3d at 1562 (citation omitted).

In this case, the Plaintiff reported having difficulty concentrating, lifting, sitting, standing, walking, bending, kneeling, climbing stairs, and using his hands. (R. 211–18). At the hearing, he expanded upon these complaints, stating, for example, that he was unable to employ his hands to open small jars or to hold certain items without dropping them. (R. 53). He also testified that he experienced daily fatigue, used a cane occasionally, had worsening vision, and suffered from monthly gout flare-ups. (R. 45–49). He acknowledged, however, that he could lift twenty pounds on a good day and could stand and walk for ten-to-fifteen minutes at a time. (R. 51–52).

In her decision, the ALJ referenced these complaints, along with the Eleventh Circuit's pain standard and the ALJ's duty to account for "all symptoms and the extent to which th[o]se symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence" based on the applicable legal

requirements. (R. 22) (citing 20 C.F.R. § 404.1529; SSR 16-3p, 2016 WL 1119029, at *1). The ALJ additionally rendered an express credibility determination regarding the Plaintiff's claimed symptoms, stating:

> [T]he [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence[,] and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(R. 26).

In support of this assessment, the ALJ engaged in a lengthy and detailed review of the Plaintiff's medical records. (R. 22–26). Those records—as the ALJ pointed out—revealed that the Plaintiff's afflictions, including his heart condition and MS, were well maintained and that his physical examinations were consistently unremarkable. *Id.* The ALJ also discussed the Plaintiff's use of Avonex to treat his MS and the general absence of any complications or exacerbations from his MS, apart from his hospitalization at one juncture due to "an adverse reaction" to medication. (R. 23–24). The ALJ further noted that the Plaintiff reported engaging in regular exercise and daily walks. (R. 25, 26).

Notwithstanding the breadth of this evidentiary recitation, the Plaintiff now argues that the ALJ erred in evaluating his subjective complaints by failing to address: (1) the Plaintiff's activities of daily living; (2) the side effects of the Plaintiff's medication; and (3) the Plaintiff's extensive work history. These contentions do not survive scrutiny.

As an initial matter and as noted above, a reviewing court will not disturb a clearly articulated credibility determination regarding a claimant's subjective complaints as long as it is buttressed by substantial evidence in the record. *Foote,* 67 F.3d at 1562. Here, the ALJ set forth specific and adequate reasons for attributing diminished weight to the Plaintiff's reported symptoms and bolstered that assessment by identifying particular items in the record, including the Plaintiff's treatment notes and his medical history. *See Dyer*, 395 F.3d at 1210. Moreover, after conducting this analysis and examining the Plaintiff's condition as a whole, the ALJ crafted an RFC that appropriately reflected the most the Plaintiff could do on a sustained basis. (R. 22–26). On this record, the ALJ did not err in considering the Plaintiff's subjective complaints.

In addition to this finding, which alone is dispositive of the Plaintiff's second challenge, the Plaintiff's contentions about his daily living activities, his medication side effects, and his extensive work history are independently meritless as well.

Beginning with the Plaintiff's daily activities, as explained previously, an ALJ "need not cite particular phrases or formulations" in making her assessment, so long as the reviewing court can be satisfied that the ALJ "considered [the claimant's] medical condition as a whole." *Chatham*, 764 F. App'x at 868. Here, for the reasons stated above, the Court is satisfied that the ALJ considered the Plaintiff's medical condition as a whole and was therefore not obligated to specifically discuss the Plaintiff's daily activities in her decision. *See id.* at 869 (finding an ALJ considered a

claimant's entire condition where the ALJ discussed, *inter alia*, that the medical record evidence undermined the claimant's testimony and claimed symptoms).

With respect to the Plaintiff's medication side effects, the Plaintiff does not cite any record evidence demonstrating that he complained of such side effects to his physicians before his most recent hospitalization. (Doc. 19 at 16). Nor does he base any part of his disability claim on medication side effects. In fact, the Plaintiff admitted at the hearing that he "never had a problem" with medication. (R. 43–44); *see also Robinson v. Comm'r of Soc. Sec.*, 649 F. App'x 799, 802 (11th Cir. 2016) (per curiam) ("[W]hile [the claimant] testified to medication side effects and reported medication side effects once, he also repeatedly declined to report any medication side effects. Therefore, the ALJ did not fail to consider [the claimant's] medication side effects . . . ."); *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990) (per curiam) (stating that the ALJ's determination regarding the claimant's side effects was proper where the claimant did not complain about side effects and the record did not disclose concerns about side effects to the doctors examining the claimant); *Cherry v. Heckler*, 760 F.2d 1186, 1191 n.7 (11th Cir. 1985) (providing that, while an ALJ may have a responsibility to investigate possible medication side effects, that responsibility does not apply to a represented claimant who "did not allege that side effects of drugs contributed to her disability").

Moreover, the ALJ addressed the matter of medication side effects specifically with the Plaintiff at the hearing (R. 43–45) and stated in her decision that she considered all of the Plaintiff's symptoms and the extent to which those symptoms

could reasonably be accepted as consistent with the objective medical evidence and other portions of the record. (R. 22 (citing 20 C.F.R. § 404.1529; SSR 16-3p)). These findings are sufficient to show that the ALJ properly evaluated the Plaintiff's medication side effects. *See Robinson*, 649 F. App'x at 802 (finding that, even though the ALJ did not mention the claimant's alleged medication side effects in particular in her decision, the ALJ satisfied her duty to consider those side effects, in part, by stating that she considered all the claimant's symptoms based on the requirements of the applicable Regulation and Social Security Ruling).

The Plaintiff's final contention regarding his "excellent work history" fails as well. (Doc. 19 at 16–20). As with the Plaintiff's daily activities, the ALJ was not required to review the Plaintiff's employment background given that the ALJ's decision was otherwise supported by substantial evidence. *See Chatham*, 764 F. App'x at 868. Even were that not the case, several courts have found that an ALJ's failure to discuss a claimant's work record is not grounds for reversal where it constitutes the ALJ's lone error. *See, e.g.*, *Sickmiller v. Saul*, 2021 WL 1186846, at *8 (M.D. Fla. Mar. 30, 2021); *Neff v. Saul*, 2020 WL 1181952, at *6 (M.D. Fla. Mar. 12, 2020). Accordingly, the Plaintiff's second challenge also lacks merit.

## IV.

For the foregoing reasons, it is hereby ORDERED:

1. The Commissioner's decision is affirmed.

2. The Clerk is directed to enter final judgment in favor of the Commissioner and to close the case.

SO ORDERED in Tampa, Florida, this 31st day of March 2022.

_____
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record